IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **Adrian Fasolino**, on behalf of himself and all others similarly situated,<br><br>Plaintiff<br><br>*versus*<br><br>**CLARITY DEBT RESOLUTION INC,** a California Corporation<br><br>Defendant, | Civil Action No. 3:24-CV-00432<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS ACTION COMPLAINT

### INTRODUCTION

ADRIAN FASOLINO ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Clarity Debt Resolution, Inc, ("Defendant" or "Clarity") to stop their illegal practice of placing, through its telemarketers and/or agents, unsolicited telephone calls in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by his attorney.

### NATURE OF THIS ACTION

1. Upon information and good faith belief, Defendant and/or its telemarketers or its agents routinely violate 47 U.S.C. § 227(b)(l)(A)(iii) by using an artificial or prerecorded voice in connection with non-emergency calls it places to telephone numbers assigned to a cellular telephone service, without prior express consent.

2. More specifically, upon information and good faith belief, Defendant and/or its telemarketers or its agents routinely use an artificial or prerecorded voice in connection with non-emergency calls it places to wrong or reassigned cellular telephone numbers.

## JURISDICTION AND VENUE

3. This action is brought by Plaintiff pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court has jurisdiction over the subject matter of the claims under the TCPA pursuant to 47 U.S.C. § 227(g)(2). This Court further has jurisdiction over the subject matter of the claims under the TCPA pursuant to 27 U.S.C. § 1331 and has pendant jurisdiction over the subject matter of the claims under the Texas Business and Commerce Code pursuant to 28 U.S.C. § 1367.

5. This Court has general personal jurisdiction over the Defendant as they, upon information and belief, authorized its telemarketers and/or agents to place calls on their behalf to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents and have otherwise availed themselves to the State of Texas.

6. Venue of this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District

of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of events giving rise to the claim alleged herein occurred within the Western District of Texas.

**PARTIES**

7. Plaintiff is an individual residing in or near El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.

8. Plaintiff may be served any relevant papers via email to his counsel Omar Darwich at omar@darwichlegal.com

9. Defendant Clarity Debt Resolution, Inc (hereinafter "Clarity") is a corporation organized and existing under the laws of California with its principal address at 2603 Main Street, Suite 100, Irvine, California 92614 and can be served via its Texas registered agent Registered Agents, Inc at 590 Bacones Drive, Suite 100, Austin, Texas 78731.

**FACTUAL ALLEGATIONS**

10. Plaintiff is a natural person who resides in this District.

11. Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

12. Plaintiff is, and has been for more than five years, the subscriber to and customary user of cellular telephone number (XXX) XXX-0012.

13. Plaintiff has no other numbers.

14. Plaintiff's telephone number (XXX) XXX-0012 is a residential number.

15. Plaintiff's telephone number (XXX) XXX-0012 is used for personal purposes and is not associated with business.

16. Upon information and belief, Defendant Clarity Debt Resolution, Inc is owned and controlled by Wahib Mashini.

17. Upon information and belief, Defendant offers debt relief services to consumers.

18. Upon information and belief, as part of their marketing, Defendant contracted with an entity United Lending aka consumer 1st solutions ("UL") to make unsolicited calls to thousands of consumers' residential phone numbers on behalf of Defendant.

19. Upon information and belief, Defendant authorizes UL to act as Defendant's agent.

20. Upon information and belief UL is located in California, however their true identity is unaware to Plaintiff at this time but will be revealed during discovery.

21. Upon information and belief, Defendant pays UL for every new customer UL retains for Defendant's debt relief services.

22. Upon information and belief, Defendant willfully accepts new customers from UL that generate through illegal telemarketing.

23. As part of Defendant's calling campaign, UL uses an artificial or prerecorded voice.

24. Upon information and belief Defendant approves of the artificial or prerecorded voice UL uses to make unsolicited calls to residential phone numbers on behalf of Defendant.

25. During the month of September 2024, UL sent at least eight calls ("the calls") to Plaintiff's telephone number (XXX) XXX-0012.

26. The calls UL sent to Plaintiff telephone number (XXX) XXX-0012 were ringless voice drops which is also known as a pre-recorded voicemail or direct voicemail marketing which is a technique that sends a pre-recorded message directly to a recipient's voicemail inbox without making their phone ring.

27. The calls all left the same exact artificial or prerecorded voice in Plaintiff's voicemail inbox that stated,

    "Hi there this is Amy I'm a senior underwriter with our approval department I'm just reaching out to let you know it appears we have a pre-approval for up to $72,000 with payments starting as low as $440 please give us a call back here at 866-659-0805 again that number is 866-659-0805"

28. The artificial or prerecorded voice messages played in the calls does not identify UL or Defendant.

29. The calls were clearly pre-recorded because (a) they were sent with automated technology used to mask Caller IDs (b) they used a singular monotone voice (c) it was a generic message not personalized for the recipient (d) there was a pause prior to the recorded message being played.

30. Plaintiff became annoyed and frustrated by the calls.

31. On or about September 25, 2024, Plaintiff called back the phone number left in the voicemails from the calls (866) 659-0805 as it was the only way to identify who was behind the calls.

32. Plaintiff was connected to an agent with UL named Fabian.

33. Fabian advised Plaintiff that the calls were regarding a loan for debt consolidation.

34. Fabian asked Plaintiff qualifying questions regarding Plaintiff's debt and credit history.

35. Fabian then transferred Plaintiff to another agent with UL named Joe Tovar.

36. Joe pulled a soft credit check of Plaintiff's credit report and solicited Plaintiff for a debt relief program on behalf of Defendant.

37. Joe advised Plaintiff that Plaintiff would make a total of forty-eight monthly payments in the amount of $403.08 to Defendant.

38. Plaintiff received two emails from Joe with one of them containing a "client service agreement" from Defendant for Plaintiff to sign.



39. The emails Plaintiff's received from Joe identified UL and Defendant.

40. Upon information and belief, Plaintiff has received additional calls from or on behalf of Defendant within the last two years that are unknown to Plaintiff at this time but will be revealed during discovery.

41. The table below displays the calls Plaintiff received on behalf of Defendant.

| Number | Date | Time | Caller ID | Notes |
| --- | --- | --- | --- | --- |
| 1. | 9/10/2024 | 12:32 PM | 216-293-9914 | Artificial or prerecorded ringless voice drop. |
| 2. | 9/11/2024 | 8:02 AM | 218-474-8472 | Artificial or prerecorded ringless voice drop. |
| 3. | 9/12/2024 | 10:53 AM | 223-237-9699 | Artificial or prerecorded ringless voice drop. |
| 4. | 9/16/2024 | 1:24 PM | 505-356-7505 | Artificial or prerecorded ringless voice drop. |
| 5. | 9/17/2024 | 8:47 AM | 256-480-0164 | Artificial or prerecorded ringless voice drop. |
| 6. | 9/23/2024 | 3:45 PM | 314-834-9147 | Artificial or prerecorded ringless voice drop. |
| 7. | 9/24/2024 | 11:18 AM | 207-315-8615 | Artificial or prerecorded ringless voice drop. |
| 8. | 9/25/2024 | 4:00 PM | 228-283-8987 | Artificial or prerecorded ringless voice drop. |

42. Upon information and belief, Defendant employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

43. Upon information and belief, Defendant does not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through Defendant's agents.

44. Plaintiff is a Texas resident.

45. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant's registration.

46. Defendant does not qualify for an exemption under § 302.053.

47. Plaintiff never provided his prior express written consent to receive any of the calls.

48. The calls were nonconsensual encounters that were not made for emergency purposes.

49. Upon information and belief, the calls were placed while knowingly ignoring the national do-not-call registry.

50. Upon information and belief, the calls were placed without training their agents/employees on the use of an internal do-not-call policy.

## BASIS FOR LIABILITY

51. Plaintiff realleges paragraphs one through fifty and incorporates them herein as if set forth here in full.

52. Even if Defendant did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

### ACTUAL AUTHORITY

53. Plaintiff realleges paragraphs one through fifty-two and incorporates them herein as if set forth here in full.

54. Defendant authorized and hired UL to generate prospective customers through illegal telemarketing calls.

55. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

56. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

57. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is 4:23-cv-03055-JMG-MDN Doc # 1 Filed: 04/13/23 Page 7 of 11 - Page ID # 7 8 liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

58. UL solicited Plaintiff on behalf of Defendant. Accordingly, UL had Defendant Clarity's actual authority to solicit Plaintiff through illegal telemarketing calls.

## APPARENT AUTHORITY

59. Plaintiff realleges paragraphs one through fifty-eight and incorporates them herein as if set forth here in full.

60. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

9 | P a g e

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

61. Defendant authorized UL to generate prospective business for them through illegal telemarketing.

62. UL Doe called and solicited Plaintiff for debt relief services and sent Plaintiff a "client service agreement" from Defendant for Plaintiff to sign. The integration of their sales efforts was so seamless that it appeared to Plaintiff that Defendant and UL all appeared to be acting together as the same company.

63. Consumers, including Plaintiff and members of the Class, reasonably believed and relied on the fact that UL had received permission to sell, market, and solicit the services of Defendant.

64. As a direct and proximate result of UL's illegal phone calls – which were made on behalf of and with the apparent authority of the other Defendants, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

**RATIFICATION**

65. Plaintiff realleges paragraphs one through sixty-four and incorporates them herein as if set forth here in full.

66. Defendant knowingly and actively accepted business that originated through the illegal calls placed by UL.

67. By accepting these contacts and executing contracts with the robocall victims, UL "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant, as described in the Restatement (Third) of Agency.

68. UL called Plaintiff and solicited customers for Defendant's services.

69. Defendant received new customers and the possibility of new business through UL.

70. Defendant ratified UL's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

71. Defendant further ratified ULs TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

72. As a direct and proximate result of UL's illegal phone calls, Plaintiff and the Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

## CLASS ALLEGATIONS

73. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

    **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) Defendant called and/or any entity making calls on behalf of Defendant (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

    **Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendant called and/or any entity any entity making

      calls on behalf of Defendant (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

74. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

75. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendants have called hundreds if not thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

76. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited messages.

77. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

78. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

79. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a. Whether the unsolicited calls were caused by the Defendant;

    b. Whether the unsolicited calls promoted the Defendant's products or services;

    c. Whether the Defendant and/or UL checked the phone numbers to be called against the Federal Do Not Call registry;

    d. Whether the Defendant and/or UL obtained written express consent prior to sending the calls;

    e. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendant's conduct.

80. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by

Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## LOCAL RULES

81. Plaintiff, pursuant to local rules, shall move to certify this complaint as a Class Action.

82. Plaintiff will reidentify the classes, exclusions of the classes, numerosity, typicality, adequacy of representation, generality, commonality, predominance, and superiority in Plaintiffs 'Motion to Certify.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF DEFENDANT'S ACTIONS

83. Plaintiff realleges paragraphs one through eighty-two and incorporates them herein as if set forth here in full.

84. The calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

85. The calls harmed Plaintiff by trespassing upon and interfering with his rights and interests in his cellular telephone.

86. The calls harmed Plaintiff by intruding upon his seclusion.

87. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(b)**
**Artificial or Prerecorded Voice**
**(On Behalf of All Class – Against Defendant)**

88. Plaintiff realleges paragraphs one through eighty-seven and incorporates them herein as if set forth here in full.

89. Defendant and/or its agents placed telephone calls to Plaintiff's and the Class members' cellular and/or residential telephones without having their prior express written consent to do so.

90. The calls were made for the express purpose of soliciting customers for Defendant Clarity's goods and services.

91. When Plaintiff and the Class answered and/or listened to their voicemails, the calls played an artificial or prerecorded voice to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

92. As a result of its unlawful conduct, Defendant repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendant to stop its illegal calling campaign.

93. Defendant and/or its agent made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

94. If the court finds that Defendant willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**Second Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
(**On behalf of Plaintiff and the Texas Subclass**)

95. Mr. Fasolino realleges paragraphs one through one through ninety-four and incorporates them herein as if set forth here in full.

96. Defendant's illegal solicitation sales calls to Plaintiff and the putative classes without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

97. Upon information and belief, the actions of the Defendant also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls through Defendant's agent UL to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

98. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

99. Upon information and belief, Plaintiff sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

100. As a result of the Defendant's violation of Texas Business and Commerce Code § 302.101, Plaintiff may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

101. As a result of the Defendant's violations of §302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Adrian Fasolino, individually and on behalf of the Class prays for the following relief:

A. An order certifying the class (after Plaintiff files his Motion to Certify pursuant to local rules);

B. An order declaring that the Defendant's actions, as set out above, violate 227(b) of the TCPA;

C. An order declaring that the Defendant's actions, as set out above, violate 227(b) willfully and knowingly;

D. An award of $500.00 per call in statutory damages arising from the TCPA §227(b) for each violation;

E. An award of $1,500.00 per call in statutory damages arising from the TCPA §227(b) for each intentional violation;

F. An order declaring that the Defendant's actions, as set out above, violate Texas Business and Commerce Code 302.101;

G. An award of $5,000.00 per call in statutory damages arising from each violation of the Texas Business and Commerce Code § 302.101;

H. An injunction requiring Defendant to cease sending all unlawful calls;

I. An award of reasonable attorneys' fees and costs; and

J. Such further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 4rd day of December 2024.

Respectfully Submitted,

The Darwich Law Firm, LLC

　/Omar F. Darwich/　_____
Omar F. Darwich
Tx Bar No. 24124686

10921 Pellicano Dr, #100
El Paso, TX 79935

(915) 671-2221
omar@darwichlegal.com

**ATTORNEY FOR PLAINTIFF**